IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Shirley A. Johnson, ) | C/A No. 3:08-803-JFA-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Midlands Technical College Foundation, ) | |
| d/b/a Midlands Technical College; ) | |
| Ronald Rhames and Timothy McLellan, in their ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This employment discrimination matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendants' motions for summary judgment. (Docket Entry 33 (Defendant Midlands Technical College Foundation) and Docket Entry 34 (Defendants McLellan and Rhames)). The plaintiff, Shirley A. Johnson ("Johnson"), filed this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), asserting that she suffered discrimination based upon her race and gender, and retaliation for engaging in protected activity under Title VII.[1]

---

[1] Additionally, the plaintiff included an age discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and a civil rights claim pursuant to 42 U.S.C. § 1983. Defendants moved for summary judgment on these claims. The plaintiff does not address these claims in her opposition memorandum; therefore, they appear to have been abandoned. In any event, the same standard would apply, see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (applying the McDonnell Douglas framework to ADEA claims); Gairola v. Commonwealth of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."), and, for the reasons stated herein, the defendants are entitled to summary judgment on these claims as well.

The defendants have filed motions for summary judgment. (Docket Entries 33 & 34.) Following two extensions of time, Johnson filed a response in opposition to the defendants' motions. (Docket Entry 48.) After an extension of time, the defendant Midlands Technical College Foundation filed a reply to Johnson's response. (Docket Entry 54.) These motions are now ready for a Report and Recommendation.

**BACKGROUND**

Viewed in the light most favorable to Johnson, the following facts are pertinent to the motions currently pending before the court. Defendant Midlands Technical College Foundation ("Midlands Tech") is a two-year technical college with five campuses in Richland and Lexington Counties. Prior to her retirement, Johnson, a white female, was employed as an Administrative Specialist II in the Operations Department on the Airport campus of Midlands Tech. From 2000 to 2007 she was supervised by Defendant Timothy McLellan ("McLellan"). McLellan reported to Craig Hess, the Director of Operations, and Defendant Ronald Rhames ("Rhames"), Senior Vice President.

In September of 2004, Johnson met with Rhames and reported that McLellan was engaging in unethical conduct and treating women poorly, including talking down to women, having a "nasty demeanor" toward them, getting in women's faces while criticizing them, taking part in conversations in which other employees were using profanity, and acting with contempt and disrespect. (Johnson Dep. at 56, Docket Entry 34-3 at 57; Johnson Aff. ¶¶ 7-8, Docket Entry 48-2 at 5.) Johnson claims that after this meeting, McLellan's treatment of her, which had previously been unpleasant, worsened. (Johnson Aff. ¶ 10, Docket Entry 48-2 at 6.) As summarized in her

affidavit,[2] Johnson asserts that McLellan began withholding information from her that she needed to do her job; that he shunned her, refused to talk to her, and looked at her in an angry and contemptuous way; that he denied her training opportunities with regard to a new computer system known as "School Dude" that Midlands Tech was implementing for operations purposes; that he gave her only satisfactory evaluations rather than the "exceeds expectations" evaluations she had received in the past; and that he took away certain job responsibilities from her following the implementation of the School Dude software program. (Id.)

Johnson further contends that she was subjected to retaliatory harassment.[3] Specifically, she complains about an incident where another operations employee, Charlie Robinette, placed pubic hairs on the toilet seat of the unisex restroom after Johnson had specifically ordered it to be cleaned. Although the evidence shows that McLellan did not actually participate in this "joke," Johnson contends that Robinette laughed about it with McLellan and that McLellan "joined in and did nothing." (Id. ¶ 11, Docket Entry 48-2 at 7.)

Johnson also alleges that she suffered race discrimination when the defendants failed to promote her to the position of Administrative Assistant to Craig Hess, a job that was awarded to a black female named Regina Gillard. Gillard had also served as an Administrative Specialist II, the same position as Johnson, but had served in the President's Office, working under Defendant Rhames. (Id. ¶ 15, Docket Entry 48-2 at 8.) Johnson contends that she was more qualified for the

---

[2]Defendant Midlands Tech argues that Johnson cannot create a genuine issue of material fact by presenting an affidavit that conflicts with her deposition testimony. (Reply Mem. Supp. Summ. J. at 6, Docket Entry 54.) While this is a correct statement of the law, the court finds that Johnson's affidavit supplements—rather than contradicts—her deposition testimony. Rule 56 contemplates that depositions are not the exclusive manner in which to present sworn evidence.

[3]Johnson stipulates that she is not asserting an independent claim for harassment/hostile work environment; rather, those allegations comprise, in part, her retaliation claim. (See Pl.'s Mem. Opp'n Defs.' Mot. Summ J. at 12, Docket Entry 48 at 12.)

Administrative Assistant position than Gillard, as she had been considered for it several years before and told that she was "overqualified" and she had performed the duties of that position when Gillard's predecessor was absent. (Id. ¶ 13, Docket Entry 48-2 at 7-8.) Midlands Tech did not advertise or "post" the vacant Administrative Assistant position ultimately filled by Gillard. (Id. ¶ 12, Docket Entry 48-2 at 7.)

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine

whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.'" Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49)).

**B.      Burden Shifting in Employment Cases**

A plaintiff may demonstrate discrimination or retaliation through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of either race discrimination, age discrimination, or retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). The defendant's burden "is a burden of production, not persuasion." Id. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "'the McDonnell

Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.'" Holland, 487 F.3d at 214 (quoting Reeves, 530 U.S. at 142).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "'not its true reason[], but [was] a pretext for discrimination.'" Holland, 487 F.3d at 214 (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)). Accordingly, the plaintiff's burden of demonstrating pretext "'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Holland, 487 F.3d at 214 (quoting Burdine, 450 U.S. at 256).

"'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated.'" Holland, 487 F.3d at 215 (quoting Reeves, 530 U.S. at 148). However, if the plaintiff creates only "a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "'the probative value of the proof that the employer's explanation is false.'" Id. (quoting Reeves, 530 U.S. at 149). To carry her "merged" burden to establish pretext and intentional discrimination, a plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct.'" Holland, 487 F.3d at 218 (quoting Beall v. Abbott Labs., 130 F.3d 614, 619

(4th Cir. 1997)) (emphasis added) (discussing plaintiff's retaliation claim); see also Burdine, 450 U.S. at 256 (discussing merging of plaintiff's burdens).

**C.     Johnson's Claims**

   **1.     Retaliation**

      **a.     Prima Facie Case**

Title VII's anti-retaliation section provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Johnson must show: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII). All three elements are at issue in this case.

"Protected activity" under the statute falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 850 (2009); Laughlin, 149 F.3d at 257. Here, the parties appear implicitly to agree that Johnson's conduct is appropriately analyzed under the opposition clause. "Oppose" means "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." Crawford, 129 S. Ct. at 850 (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). An employee need not instigate or initiate a complaint to be covered by the opposition clause. Id. at 851; see also Laughlin, 149 F.3d at 259 ("To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim.").

Defendant Midlands Tech[4] argues that Johnson's complaint to Rhames in September 2004 is not "protected activity" under Title VII because she could not have reasonably believed that the conduct she complained of was barred by Title VII. See Jordan v. Alternative Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006) (stating that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing Equal Employment Opportunity Comm'n v. Navy Federal Credit Union, 424 F.3d 397 (4th Cir. 2005)). The court disagrees. While Midlands Tech argues that Johnson's reporting of the allegedly unethical conduct by McLellan is not protected Title VII activity, see Lightner V. City of Wilmington, N.C., 545 F.3d 260 (4th Cir. 2008) (stating that Title VII prohibits discrete forms of discrimination and is not a general whistleblower statute), it fails to appreciate that, whether ultimately justified or not, Johnson's report to Rhames included a complaint that McLellan treated women worse than men. And, although Midlands Tech points out that Johnson acknowledged in her deposition that McLellan also treated some male employees rudely, the court cannot say based on the evidence presented that Johnson could not have held a reasonable belief in September of 2004 that McLellan treated women worse. (See, e.g., Johnson Dep. at 56, 69, 172, Docket Entry 34-3 at 57, 70 & Docket Entry 34-4 at 73; Notes, Docket Entry 33-4 at 6.) Midlands Tech confuses the requirement that a plaintiff have a reasonable belief that Title VII violations had occurred with a requirement that she ultimately be proved correct. On this record, the court finds that Johnson has met the first prong of a *prima facie* case of retaliation.

---

[4]Defendants Rhames and McLellan assume, only for the purposes of their motion for summary judgment, that Johnson made a good faith complaint of gender discrimination to Rhames that constituted protected activity. (Rhames & McLellan's Mem. Supp. Summ. J. at 25, Docket Entry 34-2.)

Next, all of the defendants argue that Johnson did not suffer any adverse employment action. The United States Supreme Court has held that Title VII's prohibition of adverse employment action taken in retaliation for protected Title VII activity "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). Rather, "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related acts and harm." Id. at 67. However, the anti-retaliation provision does not shield an employee from all retaliation, but rather only from retaliation that produces injury or harm. Id. Accordingly, to fall within the provision's protection, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A plaintiff must show *material* adversity to separate the significant harms from the trivial, as "Title VII . . . does not set forth 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Thus, "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not constitute materially adverse employment actions. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Nor do personality conflicts or snubbing by supervisors or co-workers. Burlington, 548 U.S. at 68 (citing 1 B. Lindeman & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996)). The test is an objective one and considers the reactions of a *reasonable* employee. Id. at 68. Further, "[c]ontext matters," and the significance of the adverse employment action must be analyzed under the circumstances particular to the plaintiff. See id. at 69. Thus, "an 'act that would be immaterial in some situations is material in others.'" Id. (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 661 (7th Cir. 2005)). The standard analyzes the challenged

retaliatory act, not the underlying conduct that gave rise to the Title VII complaint. Id. The question is whether the challenged action was material from the perspective of a reasonable person in the plaintiff's position. Id. at 69-70.

Applying this standard to the actions challenged by Johnson shows that several of the alleged actions are not materially adverse, including the allegations that McLellan shunned her, refused to talk to her, and looked at her in an angry way. Further, her complaint that McLellan downgraded his evaluation of her performance from "exceeds expectations" to "satisfactory" is not material, as it did not affect her remuneration. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650-52 (4th Cir. 2002) (holding that because the plaintiff did not demonstrate that his lower performance evaluation "affected the terms, conditions, or benefits of his employment," summary judgment was properly granted as he did not demonstrate an adverse employment action); Spears v. Mo. Dep't of Corrs. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000) ("A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment . . . [and] is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.") (citation omitted). Finally, the incident of the pubic hair on the restroom toilet, while undeniably crude, cannot be said to rise to the standard enunciated by the Supreme Court in Burlington.[5]

---

[5]Moreover, the court observes that the only reasonable conclusion that can be drawn from the evidence presented is that McLellan did not personally participate in that incident, but rather merely laughed about it afterward. (Compare Johnson Dep. at 93-99, Docket Entry 34-3 at 93-100 (containing a hearsay statement from Johnson that Corbit told her that Robinette told him that McLellan participated in the "joke") with Corbit Aff. ¶¶ 4-5, Docket Entry 34-9 (attesting that Robinette told him that Robinette placed the pubic hairs on the toilet and that Corbit has no knowledge that McLellan participated in it). Accordingly, it cannot be considered retaliatory conduct by McLellan for Johnson's complaint to Rhames. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (stating that to satisfy the third element of a prima facie case of retaliation, the plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action").

PJG

The court finds, however, that a reasonable jury could conclude that the other actions complained of by Johnson were materially adverse from the perspective of a reasonable person in Johnson's circumstances. With regard to her claim that McLellan withheld information from her by delaying or refusing to tell Johnson about work order requests which prevented her from informing employees that there were power outages or restroom closings, a jury could reasonably infer that such action, if true, would have dissuaded a reasonable employee in Johnson's circumstances from making a charge of discrimination. Burlington, 548 U.S. at 68. The same applies to the allegation that McLellan took away certain job responsibilities and denied Johnson the opportunity to attend training on the new School Dude software. See, e.g., id. at 69 (stating that "retaliat[ing] by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination").

Having determined that Johnson has established the second element of a *prima facie* case of retaliation with regard to at least some of her allegations, the court must next determine whether she has presented sufficient evidence from which a reasonable jury could find that those adverse employment actions were causally connected to her report to Rhames of McLellan's conduct toward women. Johnson does not appear to dispute that the changes in her job responsibilities were associated with the implementation of School Dude. (Johnson Aff. ¶ 10, Docket Entry 48-2 at 6 (attesting that McLellan removed some of her responsibilities as she did not receive School Dude training); Johnson Dep. at 185, Docket Entry 34-4 at 86 (agreeing that School Dude was not implemented to retaliate against Johnson); McLellan Dep. at 30, Docket Entry 34-8 at 31 (stating that Craig Hess decided to replace the maintenance management system with School Dude). With regard to those changes and the denial of School Dude training, the court finds that the lapse of at

least a year and a half from her September 2004 complaint to Rhames and the 2006 implementation of the new software negates any inference of a causal connection between those events. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); see also Johnson v. Danzig, 213 F.3d 631 (4th Cir. 2000) (Table) (affirming summary judgment as to a claim that the plaintiff was denied training over three years after the plaintiff's EEOC complaint). Similarly, with regard to the claim that McLellan began withholding critical information from Johnson following her complaint to Rhames, the court finds that Johnson's own testimony would prevent a reasonable jury from finding that those events were causally connected. (See Johnson Dep. at 146-47, Docket Entry 34-4 at 147-48) (responding that McLellan would "withhold" information "due to the nature of the job" rather than due to discrimination).

   **b.**   **Pretext**

  Even if Johnson could establish a prima facie case of retaliation with regard to these alleged actions, the defendants have articulated a legitimate, nondiscriminatory reason for them. The defendants assert that the changes in her job responsibilities resulted from the implementation of School Dude. As noted above, Johnson does not appear to dispute that the changes were associated with the new software and she acknowledges that the defendants did not implement School Dude to retaliate against her. (Johnson Dep. at 185, Docket Entry 34-4 at 86) (agreeing that School Dude was not implemented to retaliate against Johnson). Furthermore, even if the denial of training was causally connected to her 2004 complaint to Rhames, Johnson has offered no evidence other than her own opinion that she should have been selected for the training to show that the defendant's articulated reason to send Scott Barbour to the training seminar rather than her was pretextual.

Johnson has introduced no evidence from which a reasonable jury could find that the defendants' proferred explanations are untrue and that retaliation was the true reason motivating the challenged actions. Holland, 487 F.3d at 214-15.

### 2. Gender Discrimination

Johnson's claim for gender discrimination, to the extent she asserts one independent of her retaliation claim, appears essentially to consist of allegations that McLellan talked down to women, had a nasty demeanor when talking to women, getting in women's faces when criticizing them, using profanity in conversations with other employees, and acting belligerently toward women. (Johnson Aff. ¶¶ 3-5, Docket Entry 48-2 at 3-4.) She further complains that Midlands Tech did not take her complaint of discrimination seriously and took no action to address it. (Pl.'s Mem. Opp'n Mot. Summ. J. at 2-3, Docket Entry 48 at 2-3.)

To obtain relief based upon alleged gender discrimination under Title VII, a plaintiff must demonstrate that: (1) she is a member of the protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing at a level that met the employer's legitimate expectations; and (4) her position was filled by a similarly qualified individual outside the protected class or other employees who are not members of the protected class were retained under similar circumstances. Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)); see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The court observes that Johnson has abandoned her hostile work environment claim except as it is subsumed by her retaliation claim. (Pl.'s Resp. Opp'n Mot. Summ J. at 12, Docket Entry 48 at 12) (stipulating that she "will and does not pursue her harassment/hostile work environment claims outside the context of her *retaliation* case") (emphasis added). She has introduced no evidence of any adverse employment action on the basis

of *gender* other than those allegations of hostility by McLellan. Accordingly, she cannot establish a *prima facie* case of an independent gender discrimination claim.

### 3. Failure to Promote[6]

To establish a prima facie case of discrimination based on a failure to promote, Johnson must show: (1) that she is a member of a protected class; (2) that her employer had an open position for which she applied or sought to apply; (3) that she was qualified for the position; and (4) that she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. See Evans v. Technology Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). The first two elements are not at issue with regard to Johnson's claim, as the parties agree that the second element has no applicability here since Midlands Tech did not post the vacancy for the Administrative Assistant position.

The parties disagree as to whether Johnson was qualified for the Administrative Assistant position. This dispute does not preclude summary judgment in this case, however. Even assuming that Johnson has presented evidence from which a reasonable jury could find that she was qualified for the Administrative Assistant position, she cannot meet her burden to establish that the defendants' reasons for not selecting her were pretextual and that race discrimination was the real reason. See Holland, 487 F.3d at 214 (stating that once a plaintiff establishes a *prima facie* case and the defendant offers a legitimate, nondiscriminatory reason, the plaintiff must demonstrate that the reason was pretextual).

---

[6]The court observes that, to the extent that Johnson attempts to assert a failure to promote claim against Defendant McLellan, such a claim must fail, as there is no evidence whatsoever that McLellan participated in the decision making with regard to the Administrative Assistant position at issue.

First, all of the evidence shows that the decision was largely made by Hess, who is not a defendant here.[7] To the extent that Rhames participated in that decision, Johnson has introduced no evidence—other than her own opinion that she was better qualified than Gillard—that the articulated reason to hire Gillard was not true or was unworthy of credence. There is no evidence that Gillard was selected over Johnson due to race rather than Gillard's professional demeanor and demonstrated success in communicating with influential persons outside the college.

The law is well settled that it is the employer's prerogative to establish the qualifications for a position, and that a plaintiff must, to establish pretext, show that she was the better qualified candidate with respect to those qualifications that the employer deemed important. See EEOC v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 671 (4th Cir. 1983) (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position and the plaintiff must show not only that he meets these qualifications to establish a *prima facie* case but also that he is superior to the selected candidate to establish pretext), rev'd in part on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond, 464 U.S. 932 (1983); Evans v. Technologies Applications & Serv. Co, 80 F.3d 954, 960-61 (4th Cir. 1996) (emphasizing that a plaintiff's own self-interested assessment of his qualifications for a particular position is irrelevant and that it is the decision maker's assessment that matters); Hux v. City of Newport News, Va, 451 F.3d 311, 315 (4th Cir. 2006) (holding that a plaintiff cannot show pretext "simply [by] compar[ing] herself to other employees on the basis of a single evaluative factor artificially severed from the employer's

---

[7]Further, since Hess is also white, an inference arises that his choice of a black candidate over Johnson was non-discriminatory. See, e.g., Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir.1991) (stating that "it is difficult for a plaintiff to establish discrimination when allegedly discriminatory decision-makers are within the same protected class as the plaintiff"); see also Coggins v. Gov't of District of Columbia, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely.").

focus on multiple factors in combination"). Other than her assertion that she was better qualified than Gillard, Johnson has offered no evidence that the defendants' stated reason for selecting Gillard rather than Johnson (or any other candidate) was false. See Holland, 487 F.3d at 215.

Johnson also essentially asserts that Gillard was pre-selected for the position. This contention, however, does not establish a claim of race discrimination. The law is well settled that pre-selection of a candidate for a position, without proof that the pre-selection was racially motivated, does not violate Title VII. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 271 (4th Cir. 2005) (holding that evidence that a supervisor preselected an employee for promotion is insufficient for a jury to conclude that the employer's explanation was a pretext for race discrimination); Jackson v. Winter, 497 F. Supp. 2d 759, 770 (4th Cir. 2007) ("Preselection, even if accompanied by subsequent manipulation to guarantee that the preselected candidate gets the position over more qualified candidates, does not equate automatically to discrimination."). As the United States Court of Appeals for the Fourth Circuit has noted, evidence of pre-selection is not probative of discriminatory intent because it "work[s] to the detriment of all applicants for the job, black and white alike." Blue v. United States Dep't of the Army, 914 F.2d 525, 541 (4th Cir. 1990).[8]

Thus, Johnson has not shown that the defendants' stated reason to hire Gillard is false or unworthy of credence. The evidence of pretext offered by Johnson—her own asserted superior qualifications to Gillard and the defendants' alleged pre-selection of Gillard for the Administrative Assistant position—is, under controlling precedent, not probative to show that the defendants' explanation was false and that *race discrimination* was the real reason the defendants failed to

---

[8]The court notes that the parties dispute whether Midlands Tech was required by its internal policies to post the vacant Administrative Assistant position. Even assuming, however, that Johnson is correct and that posting was required (which seems doubtful on the evidence presented), such a failure to post would merely be probative of the fact that Gillard was pre-selected for this position, and would not be probative of any racially discriminatory intent.

promote Johnson. She has alleged no facts at all—other than that Rhames and Gillard are both black— tending to show that race was the true reason. See Hurd v. N.Y. Health & Hosps. Corp., No. 04 Civ. 998(PAC), 2007 WL 678403 (S.D.N.Y. March 5, 2007) (unpublished) ("The fact that one of the decision-makers involved in a personnel selection is of the same gender and race as the employee selected is insufficient, standing alone, to create an inference of discrimination."). Accordingly, her failure to promote claim must fail.

## RECOMMENDATION

For all of the foregoing reasons, the court recommends that the defendants' motions for summary judgment (Docket Entries 33 & 34) be granted.

*/s/ Paige J. Gossett*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 4, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).